729 A.2d 1069 (1999)
321 N.J. Super. 609
STATE of New Jersey, Plaintiff-Respondent,
v.
Sean M. TOTH, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 9, 1999.
Decided June 4, 1999.
Mordecai Garelick, Assistant Deputy Public Defender, for plaintiff-respondent (Ivelisse Torres, Public Defender, attorney; Mr. Garelick, of counsel and on the brief).
Jafer Aftab, Deputy Attorney General, for defendant-appellant (Peter Verniero, Attorney General, attorney; Mr. Aftab, of counsel and on the brief).
Before Judges LONG, KESTIN and WEFING.
The opinion of the court was delivered by WEFING, J.A.D.
Middlesex County Indictment No. 96-07-0938 charged defendant Sean M. Toth and co-defendant Edward W. Solomon with third-degree possession of a controlled dangerous substance (CDS), contrary to N.J.S.A. 2C:35-10a(1) (Count One); first-degree possession of CDS with intent to distribute, contrary to N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(1) (Count Two); and fourth-degree possession of drug paraphernalia with intent to *1070 distribute, contrary to N.J.S.A. 2C:36-3 (Count Three). Prior to trial, defendant moved to suppress the evidence against him. The trial court denied that motion. Thereafter, pursuant to a plea agreement, defendant entered a plea of guilty to possession of CDS with intent to distribute. He was sentenced to a custodial term of fifteen years with seven and one-half years of parole ineligibility. Appropriate penalties, fees, and assessments were also imposed.
Defendant has appealed, raising only one issue:
THE SEARCH CONDUCTED BY THE POLICE EXCEEDED THE PERMISSIBLE SCOPE OF A TERRY SEARCH AND CANNOT BE JUSTIFIED UNDER THE "PLAIN TOUCH" DOCTRINE.
We have carefully reviewed the record in light of that contention and have concluded that the trial court correctly denied defendant's motion to suppress.
The facts underlying the search of defendant are undisputed. At 2:45 a.m. on June 13, 1996, State Troopers Salvatore V. DiPaola and Kevin Goldberg were patrolling the New Jersey Turnpike in Cranbury Township, New Jersey. Trooper DiPaola was at the wheel. They spotted and paced a vehicle traveling at 70 miles per hour in a clearly-marked 35 mile-per-hour construction zone. The troopers indicated to the driver that he should pull over. The vehicle immediately moved from the left lane to the right shoulder but proceeded two-tenths of a mile before stopping.
Trooper DiPaola approached the vehicle on the passenger's side. Defendant occupied the front passenger seat and opened the window when DiPaola tapped on it. Trooper DiPaola requested the driver's credentials and vehicle's registration. Solomon, the driver, produced a boat-operator's license and an I.D. card. Trooper DiPaola repeated his request. Solomon replied that he had the proper documents, but could not find them. Solomon then opened the glove box, retrieved a white envelope, and shuffled through it. Trooper DiPaola noticed two motor vehicle summonses and asked to see them. Solomon handed DiPaola the envelope, which included a summons for driving while on the revoked list. DiPaola questioned Solomon regarding that offense; Solomon replied that the envelope held a letter from Division of Motor Vehicles stating that his license was restored. DiPaola, however, found no letter, no license, and no registration. DiPaola instead found Solomon's parole papers for drugs-and weapons-possession offenses. DiPaola ordered Solomon to get out of the car and to stand at the rear of the vehicle where Trooper Goldberg was positioned.
While Trooper DiPaola spoke with Solomon, defendant appeared nervous and repeatedly urged the officers to let Solomon and him go. After Solomon exited the vehicle, DiPaola observed defendant more closely. He observed a large bulge in defendant's groin area. DiPaola, concerned for his safety, directed his flashlight on the area. Defendant then removed his baseball cap and used it to cover his groin.
Trooper DiPaola positioned himself behind the passenger door and ordered defendant out of the vehicle. Defendant exited the vehicle with his back to DiPaola. Defendant maintained his back to DiPaola and continued to cover his groin with his baseball cap. Trooper DiPaola, still concerned for his safety, immediately conducted a Terry pat-down, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). He stated that upon feeling the object, he knew it was not a handgun but rather CDS.
After Trooper DiPaola concluded that he had touched CDS, he reached into defendant's shorts and retrieved a brown paper bag. Inside that bag were two, clear plastic bags containing cocaine and, behind them, a quantity of vials and caps wrapped in a paper towel. At the suppression hearing, the trooper clearly explained that the cocaine was to the front and that it was the cocaine within the plastic bags that he felt *1071 and immediately identified during the pat-down. Subsequent measurement revealed that defendant was carrying ten ounces of cocaine. The trial court, after viewing the exhibit, estimated that, in addition, defendant was carrying several hundred vials and caps.
It is significant to note the dimensions of the bulge Trooper DiPaola observed. During the course of defendant's motion to suppress, the trial court described the package as being approximately eight-inches across and noted that if it were compressed, it would be approximately five-inches deep. Trooper DiPaola testified that the package was rounded, not square and flat. The State's description of the bulge as "skull-like" is not unwarranted from those physical dimensions.
Defendant contends that the failure of Trooper DiPaola to describe the particular, tactile sensation that led him to conclude that defendant was secreting CDS required suppression of the evidence Di-Paola had seized. We disagree.
Because the officers observed the vehicle traveling at an excessive speed, the stop of defendant's car was reasonable. State v. Dickey, 152 N.J. 468, 475, 706 A.2d 180 (1998). When Solomon was unable to produce proper credentials, the officers reasonably pursued their investigation. Id. at 476-83, 706 A.2d 180 (discussing allowable limits of investigative detention during traffic stop); see Maryland v. Wilson, 519 U.S. 408, 414-15, 117 S.Ct. 882, 886, 137 L.Ed.2d 41, 47-48 (1997) (allowing removal and brief, investigative detention of vehicle's passenger); Pennsylvania v. Mimms, 434 U.S. 106, 110-11, 98 S.Ct. 330, 332-33, 54 L.Ed.2d 331, 336-37 (1977) (allowing brief detention of driver outside the vehicle). When Trooper Di-Paola observed the large bulge in defendant's shorts, his suspicion that defendant was armed and dangerous was reasonable; a Terry pat-down for weapons was therefore appropriate. Terry, supra, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909; State v. Thomas, 110 N.J. 673, 678-83, 542 A.2d 912 (1988).
The trial court correctly recognized that in considering whether Trooper Di-Paola had probable cause to seize the package from defendant, it had to examine the totality of the circumstances as presented to the trooper. Illinois v. Gates, 462 U.S. 213, 218, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 528 (1983); State v. Smith, 155 N.J. 83, 92-93, 713 A.2d 1033 (1998); State v. Demeter, 124 N.J. 374, 380-81, 590 A.2d 1179 (1991); State v. Novembrino, 105 N.J. 95, 119-23, 519 A.2d 820 (1987). Those circumstances included defendant's evident nervousness; his query to the trooper, "Can't you just let us go?"; his desire to shield the bulge from inspection; and the sheer size and mass of the bulge itself. See State v. Palacio, 111 N.J. 543, 545, 552, 545 A.2d 764 (1988). The totality of the circumstances also included the location at which defendant secreted the package. United States v. Rodney, 956 F.2d 295, 297 (D.C.Cir.1992) (noting that drug dealers frequently hide drugs near their genitals).
The unusual location of an object may help bolster a claim that it was immediately recognizable as contraband. If a defendant has a bulky object inside his or her crotch area, or has bulges around his or her ankles, the police are justified in believing the object is concealed contraband. While the location of the bulge alone may not provide probable cause to seize an item, only slight additional information may be necessary to establish probable cause.
[Anne Bowen Poulin, The Plain Feel Doctrine and the Evolution of the Fourth Amendment, 42 Vill. L.Rev. 741, 783-84 (1997) (citations omitted).]
We can see no basis to require, in circumstances such as those that confronted Trooper DiPaola, that an officer describe at a suppression hearing the particular, tactile sensation the officer experienced. The plain-feel doctrine enunciated in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), does not so restrict Gates`s totality-ofthe-circumstances *1072 approach. Under Dickerson, a police officer may seize non-threatening contraband detected during a Terry pat-down if the officer's search does not exceed Terry`s boundaries. Id. at 373-79, 113 S.Ct. at 2136-39, 124 L.Ed.2d at 344-48. Thus,
[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.
[Id. at 375-76, 113 S.Ct. at 2137, 124 L.Ed.2d at 346.]
The Dickerson Court analogized the plain-feel doctrine to the plain-view doctrine, id. at 375, 113 S.Ct. at 2137, 124 L.Ed.2d at 345-46, and our Supreme Court has recognized the applicability of the totality-of-the-circumstances approach to plain-view searches. Demeter, supra, 124 N.J. at 381, 590 A.2d 1179. There is no reason in law, logic, or policy that would justify a different analysis when analyzing a plain-feel matter.
Probable cause requires nothing more than "a practical, common-sense decision whether, given all the circumstances ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." Ibid. (quoting Gates, supra, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548). Trooper DiPaola was not required to exclude all of the possible items defendant may have placed within his groin area before concluding that there was a "fair probability" that the bulge contained CDS.
[An officer's] open-minded concession that [defendant's] pocket could have contained `anything at all' does not preclude his having probable cause to believe that the pocket contained drugs. Probable cause `merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband.'
[United States v. Rogers, 129 F.3d 76, 79 (2d Cir.1997) (quoting Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502, 514 (1983)).]
The trial court was fully able to assess the credibility of the trooper's assertion that he immediately recognized CDS without the trooper's description concerning whether the package was hard or soft, powdery or granular. Such particularized descriptions involve identifying either the particular drug involved or the manner in which it was packaged rather than the general identification of CDS. The trooper's statement that he immediately recognized CDS from its feel is analogous to an officer testifying that he immediately recognized marijuana from its smell. Courts routinely accept such testimony without requiring the officer to describe verbally the odor the officer detected.
The trial court considered DiPaola "an absolutely credible" witness. Significantly, the trooper was given several opportunities to elaborate on the circumstances that confronted him but declined to do so. For example, although Trooper DiPaola remembered employing his car's spotlight when the troopers pulled over the speeding vehicle, DiPaola stated that he could not recall if he had turned on the take-down lights as well. In addition, he testified that he could not determine how many people were in the stopped vehicle until he approached it on foot. He made no assertion of observing any suspicious movements by the vehicle's occupants. When questioned regarding the discovery of papers indicating that the driver was on parole for drug and weapons offenses, the trooper said that that discovery did not heighten his suspicions concerning the presence of narcotics in the car.
Further, Trooper DiPaola had extensive experience with narcotics investigations and arrests and testified about his prior experiences both in identifying and in excluding *1073 CDS during pat-downs. Trooper DiPaola testified that he did not, in any way, manipulate or explore the bulge with his fingers before concluding that it contained CDS.
Defendant relies upon three cases in support of his position. We do not find them persuasive. In In the Interest of S.D., 429 Pa.Super. 576, 633 A.2d 172, 177 (1993), for instance, the court specifically noted that it was not confronted with "the validity of the `plain feel' doctrine" on the basis of the facts presented.
In Jones v. Maryland, 343 Md. 448, 682 A.2d 248, 250 (1996), the defendant had an unspecified quantity of crack cocaine in the left-front pocket of his pants, and the officer did not observe a bulge before beginning his pat-down. Moreover, the Jones court deferred to the trial court's determinations regarding the credibility of the investigating officer and the sufficiency of the facts underlying his conclusions. Id. at 257, 255-56. Finally, defendant refers to Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Sibron, however, predated Dickerson by almost twenty-five years and thus has no application to analysis of plain-feel issues.
In light of all the surrounding circumstances, Trooper DiPaola's conclusion, accepted by the trial court, that it was fairly probable that the extremely large bulge he observed and felt contained CDS is fully supported by the record. State v. Johnson, 42 N.J. 146, 161-62, 199 A.2d 809 (1964).
We affirm the trial court's denial of defendant's motion to suppress.
LONG, P.J.A.D., concurring.
I concur in the result reached by my colleagues to the extent that their affirmance is based upon the judge's evaluation of Trooper DiPaola as an "absolutely credible witness."
However, I part company from them in connection with their analysis of the interplay between Minnesota v. Dickerson[1] and Illinois v. Gates.[2] All parties and the majority agree that, before Trooper Di-Paola touched the bulge in defendant's groin, he did not have probable cause to arrest or search defendant but only a reasonable suspicion that defendant might be armed, justifying a Terry patdown for weapons. Dickerson defined the margins of police authority to seize items during such a patdown:
If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.
[Dickerson, supra, 508 U.S. at 375-76, 113 S.Ct. at 2137, 124 L.Ed.2d at 346.] This is the plain feel doctrine which creates a narrow exception to the established principle that the articulable suspicion which justifies a Terry patdown does not authorize seizure. What is required to justify a seizure under plain feel is that the identity of the object touched by the officer be "immediately apparent" to him or her. Thus, for example, a gun, a knife, a vial, a grenade, a hypodermic needle, or even rock form cocaine, the identities of which are immediately ascertainable from touching their contour or mass, can be seized. As Dickerson teaches however, the officer may not manipulate or explore the item, because instantaneous recognition of its identity is what is required for seizure. Id. at 379, 113 S.Ct. at 2139, 124 L.Ed.2d at 348.
If that is the standard, it follows that an officer is not entitled to conjecture or guess about the probable nature of an item which has no particular identifying characteristics. In other words, a totality of circumstances analysis under Gates cannot *1074 be used to suggest the contents of an otherwise unidentifiable parcel. This is obvious from the "immediately apparent" requirement which is the essential analogy to plain view. It is only immediate recognition of what is felt that transmutes mere articulable suspicion into probable cause to seize in a plain feel case. Thus, to the extent that the majority decision suggests that it is "fairly probable" that a bulge contains drugs based on surrounding circumstances, I believe that it eviscerates Dickerson.
This case is subject to a plain feel analysis. The trooper did not claim that he had probable cause to arrest, or that the search was incident to that arrest, in which case a Gates analysis would be relevant. On the contrary, Trooper DiPaola testified that the contents of defendant's groin bulge was "immediately apparent" to him when he touched it and that, as a result, he seized it. If it was immediately apparent, he was entitled to seize the evidence under plain feel. If it was not, a post hoc Gates justification cannot save the day.
That said, I concur in the result based on the trial judge's expressed belief in the truthfulness of Trooper DiPaola who testified that the identity of the package he felt during the Terry pat down was "immediately apparent" to him as drugs based upon his training and experience.
NOTES
[1] 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).
[2] 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).