**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3351-14T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HOWARD S. THOMAS,

    Defendant-Appellant.

_____

Submitted January 19, 2017 — Decided  July 26, 2017

Before Judges Fuentes and Gooden Brown.

On appeal from the Superior Court of New
Jersey, Law Division, Monmouth County,
Indictment No. 14-04-0604.

Joseph E. Krakora, Public Defender, attorney
for appellant (Rochelle Watson, Assistant
Deputy Public Defender, of counsel and on the
brief).

Christopher J. Gramiccioni, Monmouth County
Prosecutor, attorney for respondent (Keri-
Leigh Schaefer, Assistant Prosecutor, of
counsel and on brief).

PER CURIAM

    Following the denial of his motion to suppress evidence seized

in a warrantless search of his bag, defendant Howard Thomas entered

a negotiated plea of guilty to second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1), and was sentenced to a five-year prison term with a mandatory five-year period of parole ineligibility. Pursuant to Rule 3:5-7(d), defendant appeals from the October 20, 2014 order denying his motion to suppress the handgun. We affirm.

I.

The only witness at the suppression hearing was one of the responding officers, Patrolman Allen Williams, a twelve-year veteran with the Asbury Park Police Department. According to Williams, at about 9:30 a.m. on June 15, 2013, he was dispatched to an apartment to check on a report of "physical domestic assault." The two-story apartment was located in a large apartment complex and shared a front porch with an adjoining apartment. To access the apartments, there were two steps from the sidewalk onto the porch, which then lead to the front door of each apartment.

When Williams arrived, another officer was already on scene. Williams knocked on the screen door and entered the apartment through the main door, which was open. Once inside, Williams observed an individual, later identified as defendant, "coming down the stairs carrying a large black nylon bag and a tan canvas bag." Defendant walked past Williams and out the front door.

2

Williams also observed a woman in the living room area on the first floor who identified herself as defendant's girlfriend.

Defendant's girlfriend reported to Williams that defendant had assaulted her. She informed Williams about prior unreported domestic violence incidents between herself and defendant and told Williams that "ever since [defendant] has been living with her, her kids have . . . seen arguing, fighting and guns." Williams inquired whether there were "any guns in the premises" to which she responded "no, not that I know of because I check him from head to toe when he comes inside the house." Although she consented to a search of her apartment, Williams never conducted the search because she told him that she was pregnant and showed him physical injuries from the assault consisting of "a laceration to her upper lip" and "her swollen right hand[.]" Despite her injuries, she refused first aid.

When another officer arrived and began interviewing defendant's girlfriend, Williams went outside to the porch where a different officer arrested defendant for simple assault. Defendant was permitted to use his cell phone to contact his mother to come and retrieve his belongings, consisting of the black and tan bags that were located outside on the porch. Although the bags were in proximity to defendant on the porch, they were not searched incident to defendant's arrest.

3

After defendant was transported to police headquarters, the bags remained on the porch awaiting the arrival of defendant's mother. As Williams prepared to depart the scene to respond to other service calls, he decided to place the bags inside the apartment for safekeeping until defendant's mother arrived. Williams testified that he was not expecting to detect any contraband and his only motivation in removing the bags was to prevent defendant's property from being stolen.

Williams testified that he picked up the black bag first. The motion judge described the black bag as about "the size of a pillowcase with a drawstring at the top" and Williams testified that the bag was partially open and filled with items. According to Williams, when he picked up the black bag with his left hand and then grabbed the bag with his right hand, he felt a handgun on the right side of the bag close to the top. Williams testified he did not manipulate the bag in any way but believed he felt a handgun based on his "training and experience in handling firearms."

Once Williams detected the handgun, he "opened up the bag and . . . [saw] the butt of the gun inside the bag[.]" He immediately called another officer and had the gun photographed inside the bag. The gun was then removed from the bag and identified as a Ruger 40 caliber handgun. Inside the gun was a magazine loaded

with bullets. A subsequent National Crime Information Center (NCIC) search revealed that the gun was stolen.

The motion judge credited Williams' testimony, describing his testimony as "clear, candid, and convincing." The judge found that Williams "was honest and very straightforward" about his observations. Accordingly, the judge made factual findings consistent with Williams' testimony and concluded that "[d]efendant's gun was lawfully seized under the plain-feel doctrine, as an exception to the warrant requirement."

Initially, the judge distinguished State v. Perkins, 358 N.J. Super. 151 (App. Div. 2003), noting:

> As was made clear in this case, Patrolman Williams did not seize the gun based on the domestic violence call he received from the victim. Although it was elicited through Patrolman Williams' testimony that he was going to search the apartment for weapons, he did not do so. The revelation of the gun in [d]efendant's nylon bag was wholly unrelated to a "search" of any kind. Patrolman Williams seized the gun based on the plain-feel of the [d]efendant's nylon bag. Thus, the Perkins case is not applicable.

The judge also examined whether Williams' conduct in moving the bag from the porch to the interior of the apartment for safekeeping was covered under the Fourth Amendment and concluded that it was not. The judge explained:

> The victim's porch was shared by another apartment and served as a route of access for

anyone visiting the premises. As such, it is only a semi-private area. [State v. Johnson, 171 N.J. 192, 209 (2002)]. Once patrolman Williams went back outside the victim's residence and the [d]efendant was placed under arrest, he "came onto private property for a legitimate purpose." The porch that he was situated on was a "place visitors could be expected to go." [Ibid.]. Thus, his observation of the [d]efendant's nylon bag, including the "plain" feel of the gun inside the [d]efendant's bag was "made from such a vantage point which is not covered by the Fourth Amendment." [Ibid.].

In applying the plain feel doctrine to his factual findings, the judge reasoned:

> Here, Patrolman Williams was dispatched to the victim's ([d]efendant's girlfriend) home after receiving a call from the victim that [d]efendant punched her in the face. As such, Patrolman Williams was lawfully at the scene. While Patrolman Williams was at the scene and [d]efendant was placed under arrest, [d]efendant left his thin, black, nylon bag outside of his apartment for his mother to retrieve from his girlfriend's apartment. However, the officers who were on scene were unable to remain at the [d]efendant's apartment, and did not want to leave [d]efendant's bag outside unattended. . . . Thus, Patrolman Williams picked up the bag and placed it inside the apartment for safekeeping. Patrolman Williams did not open the bag, look inside the bag, or manipulate the bag in any way. He simply picked up the bag in a non-intrusive manner to protect it from a potential crime of theft. As such, no reasonable expectation of privacy was invaded. . . . As such, his actions were lawful, in that he simply wanted to "put the bag inside the house for safekeeping."

Further, the feel of the gun's contour or mass in [d]efendant's nylon [b]ag made the gun's identity immediately apparent. Once Patrolman Williams picked the nylon bag up, without manipulating the nylon bag from the outside in any way, he felt an object whose "contours and mass he clearly and immediately recognized" to be consistent with that of a handgun based on his training and experience.

. . . .

Further, the victim informed Patrolman Williams that since the [d]efendant has been to her apartment, her kids "have seen arguing, fighting, and guns." She also stated that she previously told the [d]efendant to "get it out of her house," referring to the [d]efendant's alleged gun. Thus, based on the totality of the circumstances, including Patrolman Williams' training and experience with handguns, the victim's prior statements, and the feel of a hard metal object, he was immediately able to recognize the object he felt inside the [d]efendant's bag as a gun.

Accordingly, the judge denied defendant's motion to suppress the handgun and signed a memorializing order on October 20, 2014. This appeal followed.

II.

On appeal, defendant raises the following arguments for our consideration.

POINT I

THE PLAIN FEEL DOCTRINE DOES NOT JUSTIFY THE WARRANTLESS SEIZURE OF THE HANDGUN IN DEFENDANT'S BAG.

7

A.   BECAUSE DEFENDANT MADE HIS OWN
ARRANGEMENTS FOR THE SAFEKEEPING OF
HIS PERSONAL PROPERTY FOLLOWING HIS
ARREST,   THE   POLICE   ACTED
UNREASONABLY   IN   SEIZING   HIS
PROPERTY TO PLACE IT BACK INSIDE THE
HOME OF THE COMPLAINANT.

B.   BECAUSE THE ILLEGALITY OF THE
FIREARM   WAS   NOT   IMMEDIATELY
APPARENT,   THE   POLICE   LACKED
PROBABLE CAUSE TO SEIZE THE FIREARM
PURSUANT TO THE PLAIN FEEL DOCTRINE.

When a motion judge has denied a suppression motion, our review of the motion judge's factual findings "is highly deferential." State v. Gonzales, 227 N.J. 77, 101 (2016) (citation omitted). Because the motion judge has the "opportunity to hear and see the witnesses and to have the 'feel' of the case," Ibid. (quoting State v. Johnson, 42 N.J. 146, 161 (1964)), the motion judge's factual findings will be upheld so long as "sufficient credible evidence in the record" supports those findings. State v. Elders, 192 N.J. 224, 243-44 (2007) (citations omitted). However, we review issues of law de novo. State v. Watts, 223 N.J. 503, 516 (2015).

Applying that standard of review, we discern substantial credible evidence in the record to support the judge's findings of fact and we agree with the judge's application of those facts to the law. Defendant argues that the motion judge erred in sustaining the warrantless search under the plain feel doctrine.

Defendant asserts that the seizure failed to meet two elements of the plain feel doctrine. First, Williams knew defendant left his bag on the porch for his mother to retrieve, rendering the police conduct unreasonable under the circumstances. "Second, the illegality of the handgun was not immediately apparent because it was discovered on the porch of a private residence, and its possession was presumptively legal under N.J.S.A. 2C:39-6(e)." On the latter point, defendant asserts that the illegality of the handgun was not discovered until after it was seized and an NCIC search at headquarters revealed that the gun had been reported stolen. We are unpersuaded by defendant's arguments.

"A warrantless search [or seizure] is presumed invalid, unless it falls within one of the recognized exceptions to the warrant requirement" and there exists probable cause. State v. Moore, 181 N.J. 40, 44 (2004) (alteration in original) (quoting State v. Cooke, 163 N.J. 657, 664 (2000)); State v. Valencia, 93 N.J. 126, 133 (1983). Probable cause is supported by the "totality of the circumstances[,]" State v. Toth, 321 N.J. Super. 609, 614 (App. Div. 1999), certif. denied, 165 N.J. 531 (2000), and "requires nothing more than 'a practical, common-sense decision whether, given all the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found

in a particular place.'"  Id. at 615 (alteration in original)

(quoting State v. Demeter, 124 N.J. 374, 380-81 (1991)).

One of the recognized exceptions to the warrant requirement

is the plain-feel doctrine.  The plain-feel doctrine permits the

warrantless seizure of contraband discovered by an officer through

the sense of touch during an otherwise lawful encounter.  Minnesota

v. Dickerson, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334

(1993).  Analogizing the plain-feel doctrine to the plain-view

doctrine, the Dickerson Court explained:

> The rationale of the plain-view doctrine is
> that if contraband is left in open view and
> is observed by a police officer from a lawful
> vantage point, there has been no invasion of
> a legitimate expectation of privacy and thus
> no "search" within the meaning of the Fourth
> Amendment — or at least no search independent
> of the initial intrusion that gave the
> officers their vantage point.  The warrantless
> seizure of contraband that presents itself in
> this manner is deemed justified by the
> realization that resort to a neutral
> magistrate under such circumstances would
> often be impracticable and would do little to
> promote the objectives of the Fourth
> Amendment.  The same can be said of tactile
> discoveries of contraband.  If a police
> officer lawfully pats down a suspect's outer
> clothing and feels an object whose contour or
> mass makes its identity immediately apparent,
> there has been no invasion of the suspect's
> privacy beyond that already authorized by the
> officer's search for weapons; if the object
> is contraband, its warrantless seizure would
> be justified by the same practical
> considerations that inhere in the plain view
> context.

> [Id. at 375-76, 113 S. Ct. at 2137-38, 124 L.
> Ed. 2d at 345-46 (citations omitted).]

The Dickerson Court emphasized that, for the plain-feel exception to apply, the incriminating character of the object must be "immediately apparent." Ibid. In State v. Jackson, 276 N.J. Super. 626 (App. Div. 1994), we explained that since the plain-feel exception is "a corollary to the plain view doctrine[,]" the same public policy concerns undergirding the plain-view exception applied. See id. at 628, 630-31; see also Toth, supra, 321 N.J. Super. at 615 (stating "[t]here is no reason in law, logic, or policy that would justify a different analysis when analyzing a plain feel matter."), certif. denied, 165 N.J. 531 (2000).

Because the plain-feel doctrine assumes an otherwise lawful encounter, an analysis of its applicability must, of necessity, evaluate the circumstances of the police encounter. While the plain-feel doctrine ordinarily arises in the context of a Terry[1] stop, its application is not limited to such circumstances. Cf. State v. Evans, 449 N.J. Super. 66, 82-86 (App. Div. 2017) (concluding that the plain feel doctrine did not satisfy the

---

[1] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

statutory criteria for a strip search under N.J.S.A. 2A:161A-1(b)).

Here, Williams' physical contact with defendant's bag occurred after Williams had responded to a domestic violence service call during which defendant was arrested and left his bag for his mother's retrieval on a shared porch of a large apartment complex. Williams had no intention of searching defendant's bag when he moved it to the interior of the apartment for safekeeping. Rather, his intention was to protect defendant's belongings and the detection of the gun was entirely inadvertent.[2]

"One seeking to invoke the protection of the [F]ourth [A]mendment must establish that a reasonable or legitimate expectation of privacy was invaded by government action." State v. Marshall, 123 N.J. 1, 66 (1991), supp. 130 N.J. 109 (1992) (citing Smith v. Md., 442 U.S. 735, 740, 99 S. Ct. 2577, 2580, 61 L. Ed. 2d 220, 226 (1979)). "The resolution of that issue depends on whether the person 'exhibited an actual (subjective) expectation of privacy,' and whether the expectation of privacy

---

[2] We note that in State v. Gonzales, 227 N.J. 77 (2016), our Supreme Court discarded the prior requirement of the plain-view exception that evidence be discovered inadvertently, and determined that, prospectively, as long as the officer is "lawfully . . . in the area where he observed and seized the incriminating item or contraband," and it is "immediately apparent that the seized item is evidence of a crime[,]" the exception applies. Id. at 101. The same analysis would apply to the plain-feel doctrine.

is 'one that society is prepared to recognize as reasonable.'" Id. at 66-67 (citations omitted).

Here, although defendant expected his mother to retrieve his bag, he nonetheless placed it on a shared porch of a large apartment complex. It is well settled that

> a portion of the curtilage, being the normal route of access for anyone visiting the premises, is only a semi-private area. . . . Thus, when the police come on to private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment.
>
> [State v. Johnson, 171 N.J. 192, 209 (2002) (citations omitted).]

Moreover, "[t]he curtilage concept has limited applicability with respect to multi-occupancy premises because none of the occupants can have a reasonable expectation of privacy in areas that are also used by other occupants." Ibid. (quoting State v. Ball, 219 N.J. Super. 501, 506-07 (App. Div. 1987)).

We next consider whether the removal of the bag nevertheless constituted a seizure for fourth-amendment purposes. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." Marshall, supra, 123 N.J. at 67 (quoting U.S. v. Jacobsen, 466 U.S. 109,

113, 104 S. Ct. 1652, 1656, 80 L. Ed. 2d 85, 94 (1984)). "The [F]ourth [A]mendment prohibits not all searches and seizures but only those that are deemed unreasonable." Ibid. (citing State v. Campbell, 53 N.J. 230, 233 (1969)). It bears noting that "the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" U.S. v. Knights, 534 U.S. 112, 118-119, 122 S. Ct. 587, 591, 151 L. Ed. 2d 497, 505 (quoting Wyo. v. Houghton, 526 U.S. 295, 300, 119 S. Ct. 1297, 1300, 143 L. Ed. 2d 408, 414 (1999)).

Applying these principles, we agree with the motion judge that, in the totality of the circumstances, Williams' conduct was objectively reasonable and the seizure of the handgun from defendant's bag was justified under the plain-feel doctrine. Williams' handling and movement of defendant's bag was not covered by the Fourth Amendment and did not constitute a seizure for Fourth-Amendment purposes because he did not intrude on a reasonable expectation of privacy or meaningfully interfere with defendant's possessory interest in the property. Further, the character of the contraband was "immediately apparent." Williams testified that, based on his training and experience with firearms, it was "immediately apparent" that the object was a handgun based

upon mere touch, rather than any manipulation. Additionally, the victim's statement that there had been prior unreported incidents of domestic violence and that her children had witnessed "arguing, fighting and guns" as a result of defendant's presence in the apartment, lend further support to Williams' belief that contraband or evidence of a crime would be found in defendant's bag.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION