**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2816-15T2

STATE OF NEW JERSEY
IN THE INTEREST OF D.H.,
a Juvenile.

_____

Submitted May 17, 2017 — Decided August 10, 2017

Before Judges Fuentes, Simonelli and Farrington.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FJ-09-306-16.

Joseph E. Krakora, Public Defender, attorney for appellant D.H. (Solmaz F. Firoz, Assistant Deputy Public Defender, of counsel and on the briefs).

Esther Suarez, Hudson County Prosecutor, attorney for respondent State of New Jersey (Rookmin Cecilia Beepat, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant entered a conditional plea to acts, which, if committed by an adult, would constitute third-degree possession of heroin with intent to distribute, N.J.S.A., 2C:35-5a. The juvenile appeals from the denial of his motion to suppress the

heroin found on his person during a pat-down search after his arrest. We affirm.

On September 7, 2015, officers of the Jersey City Police Department received a radio transmission advising all available units to respond to Cator and Ocean Avenues on the report of a person fitting the description of an individual suspected in connection with a shooting homicide observed in the area. The report was based upon information received from a citizen caller who advised he had seen a picture of the suspect in the newspaper. The suspect was described as "a black male," weighing 121 pounds, and standing five-foot-six-inches tall. The caller described the person he believed to be the suspect as wearing a white sleeveless t-shirt, black pants with a white stripe down the sides, and Afro style hair.

Detective Javier Toro testified he contacted the caller after the Sheriff's Department reported the call. The caller confirmed the description he had given previously and provided Toro with the location of the individual. Detective Toro called the local precinct and requested they send an officer to the location.

Thereafter, Detective Ray Weber drove past the location and observed a person fitting the description with two other males. Perimeter units were called in and approached the individuals.

Officer Collin Congleton handcuffed D.H.,[1] who he believed to be the homicide suspect, and patted him down. He immediately identified through the thin material of D.H.'s athletic pants what turned out to be ninety bags of heroin. The officer testified packaged heroin has a "distinct size, shape and texture", which was immediately recognizable to him because of the years he had spent in narcotics and on the street and the many hundreds of times he had encountered heroin in this way.

Officer Congleton testified that D.H. was cooperative in identifying himself and that he stated his name was D.H. Despite the name being different from that of the homicide suspect, the arresting officers testified that they were unable to ascertain D.H. was not the suspect. D.H.'s appearance, an African American male, five-foot-six-inches tall, weighing 130-140 pounds, wearing clothing matching the description given by the caller, and strong physical resemblance to the wanted notice picture, caused them to doubt his identity until they returned to headquarters. There the

---

[1] Although the juvenile refers to his encounter as a "stop" or investigative detention, we deem the facts indicate he was arrested. A stop must be "'justified at its inception' by a reasonable and articulable suspicion of criminal activity." State v. Rosario, ___ N.J. ___, ___ (2017) (slip op. at 16) (citing State v. Dickey, 152 N.J. 468, 476 (1998)). "An arrest . . . requires probable cause and generally is supported by an arrest warrant or by demonstration of grounds that would have justified one." Id. (slip op. at 11) (citations omitted).

officers determined from the computer aided dispatch system (CAD) that D.H. had a chest tattoo, and the suspect did not. D.H. now appeals raising the following contention:

POINT I

THE BASIS FOR STOPPING D.H. WAS AN UNCORROBORATED ANONYMOUS TIP WITH UNKNOWN RELIABILITY, THE STOP WAS UNCONSTITUTIONAL AND THE FRUITS THEREFROM MUST BE SUPPRESSED.

The Fourth Amendment of the United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution guarantee the right "of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV; N.J. Const. art. I, § 7. "Warrantless searches presumptively violate those protections, but 'not all police-citizen encounters constitute searches or seizures for purposes of the warrant requirement.'" State v. Rosario, ___ N.J. ___, ___ (2017) (slip op. at 9) (quoting State v. Rodriquez, 172 N.J. 117, 125 (2002)).

In Rosario, our Supreme Court noted "[i]n escalating order of intrusiveness upon a citizen's rights, three categories of encounters with police have been "identified by the courts: (1) field inquiry; (2) investigative detention; and (3) arrest." Ibid.

The circumstances of D.H.'s detention make it clear that his encounter with the police began as an arrest. Officer Congleton

A-2816-15T2

testified he handcuffed D.H. before patting him down. Prior to his arrest, D.H. was standing outside a house with other people when he was surrounded by several police officers who intended to arrest him as a homicide suspect. It is indisputable that D.H. was not free to leave. Having determined that D.H.'s encounter with the police was an arrest, "we then must consider the second question of whether, based on a totality of the circumstances," there was probable cause for the arrest, and in the absence of an arrest warrant, grounds which would have justified one. Id.

The circumstances leading to the arrest commenced with information from a citizen caller. Anonymous telephone calls standing alone, have long been recognized as "inherently lack[ing] the reliability necessary to support reasonable suspicion because the informant's 'veracity . . . is by hypothesis largely unknown, and unknowable.'" Ibid. (citing Rodriquez, supra, 172 N.J. at 127-28). As noted by the motion court in its decision on the record, the caller was not anonymous, and the information was confirmed by both Detectives Toro and Weber. Moreover, the caller was not reporting "knowledge of concealed criminal activity[,]" but his personal observations. Id. (slip op. at 16-17).

The court found the testifying police officers to be credible. Based on their testimony and experience, Judge Alvaro L. Iglesias concluded, "So, given the circumstances, given the fact that the

suspect that was being sought was a suspect in a shooting homicide, and in light of all the circumstances, the search was justified under the warrant exception."

We find the motion judge properly found, based upon the testimony of the police and the totality of the circumstances, there was both probable cause and grounds, which would have supported an arrest warrant on the facts then known to the police.

We next consider whether the pat-down of D.H. was conducted within the confines of Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). We find the court correctly determined Officer Congleton acted as "a reasonably prudent [officer] in the circumstances would [and was] warranted in the belief that his safety or that of others was in danger." State v. Thomas, 110 N.J. 673, 685 (1988) (quoting id. at 27, 88 S. Ct. at 1883, 20 L. Ed. 2d at 909). Acting under the reasonable premise that D.H. was the homicide suspect, the pat-down of D.H.'s outer clothing was a minimal intrusion. D.H.'s cooperation with the police, by giving them his correct name, does not negate the reasonable and articulable suspicion for the arrest or the subsequent pat-down.

Here, as in State v. Toth, 321 N.J. Super. 609, 614-16 (App. Div. 1999), certif. denied, 165 N.J. 531 (2000), the motion court found Officer Congleton immediately knew, without manipulation,

6

what he felt in D.H.'s pocket was heroin and not a weapon. As the judge noted,

> [Congelton] performed the pat-down -- a pat-down of the outer clothing. And he testified, and I find he did it in a methodical way, looking for a weapon because the police officers knew that the suspect could be armed and dangerous . . . [for] his protection and the protection of others. While he was doing the pat-down, he felt over the clothing what he recognized as a bundle of heroin from many prior experiences which he -- I believe he stated hundreds of cases. This was 90 bags or nine bundles. And he felt it, because of his experience, he knew that that was heroin. That happened as he was doing the pat-down for weapons for the protection of everyone.

The judge found the seizure, conducted during the pat-down, did not exceed Terry's boundaries. The "plain feel" doctrine has been analogized to the "plain view" doctrine. "[O]ur Supreme Court has recognized the applicability of the totality-of-the-circumstances approach to plain-view searches. There is no reason in law, logic, or policy that would justify a different analysis when analyzing a plain-feel matter." Toth, supra, 321 N.J. Super. at 615 (citing State v. Demeter, 124 N.J. 374, 381 (1991)).

We find the motion court correctly found there was no invasion of D.H.'s privacy, beyond that already authorized by the officer's search for weapons, in the warrantless seizure of the heroin from his person, in a plain-feel context.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2816-15T2