**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4844-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GENESIS TORRES,

    Defendant-Appellant.

_____

> Submitted May 21, 2019 – Decided June 4, 2019
>
> Before Judges Gilson and Natali.
>
> On appeal from Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 17-12-0608.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Laura B. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Alycia Irene Pollice, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Genesis Torres appeals from a May 18, 2018 judgment of conviction, following his guilty plea to third-degree possession of a controlled dangerous substance, heroin, contrary to N.J.S.A. 2C:35-10(a)(1). He was sentenced to a 364–day county jail term, to be followed by three years of probation, along with applicable fines and penalties. Defendant entered his plea following the denial of his motion to suppress. On appeal, he argues:

> POINT I
>
> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE POLICE DID NOT HAVE THE REQUISITE REASONABLE SUSPICION TO CONDUCT AN INVESTIGATORY STOP OF DEFENDANT.
>
> POINT II
>
> WITH NO BASIS TO BELIEVE THAT DEFENDANT WAS ARMED AND DANGEROUS, POLICE HAD NO LAWFUL REASON TO FRISK OR SEARCH HIM. THEREFORE, ANY EVIDENCE FOUND ON DEFENDANT'S PERSON MUST BE SUPPRESSED.

Having considered defendant's arguments in light of the record and applicable legal principles, we conclude, based on the totality of the circumstances, that the police had a reasonable articulable suspicion to stop and frisk defendant, and seize the heroin in his pocket. Accordingly, we affirm.

A-4844-17T4

I.

At the suppression hearing, one witness testified; Detective Frederick Bender, a seventeen-year veteran of the Trenton Police Department. Bender's experience included a three-year assignment to the Patrol Unit in the eastern portion of the city, twelve years in the Trenton Anti-Crime (TAC) Unit, a special unit designed to combat street-level narcotic sales and violent offenders, and approximately two years in the Violent Crimes Unit (VCU), where his job responsibilities mirrored those in the TAC unit.

As a patrol officer, and member of the TAC and VCU units, Detective Bender testified that he participated in "thousands" of narcotic investigations, and "hundreds" of arrests, in the eastern section of Trenton where defendant was arrested, which Bender described as a "high crime area." In addition to offenses related to the sale and distribution of controlled dangerous substances, he also encountered "significant weapons," including "firearms[] [and] knives," "numerous times" in that area.

On October 27, 2017, while he and two other officers were patrolling east Trenton in an unmarked police vehicle, Detective Bender testified that he observed two individuals, one of whom was on a bicycle, "huddled close together, face-to-face" having a brief conversation on the sidewalk. Bender saw

one of the individuals, later identified as defendant, "manipulat[e] a rectangular object in his hand" that he had just removed from his pocket, as if "dealing a deck of cards," and hand it to the man on the bicycle. He also stated that defendant's actions were consistent with the way individuals distribute smaller amounts of heroin, although he acknowledged that he did not witness the man on the bicycle hand anything to defendant. He further testified that the transaction lasted about twenty to thirty seconds. After the man on the bicycle pedaled away, two officers from a different unit unsuccessfully attempted to apprehend him.

Detective Bender and his partners exited their vehicle "to further investigate" and "advised [defendant]. . . to stop . . . ." He testified that he placed defendant "in a pat frisk" position because he "believed [he] witnessed a narcotics transaction" and explained that in his experience "what comes along with narcotics . . . is weapons," "whether there be a gun, a knife, [or] some kind of weapon." Detective Bender acknowledged that there was nothing that defendant specifically did at that time that indicated he had a weapon, but explained, in his experience, "usually they're concealed . . . when [people who deal in narcotics] see[] the police."

Detective Bender stated he patted "the right side of [defendant's] pants," and "immediately felt what [he] immediately recognized through [his] training and experience as a bundle of distributable amount of heroin." He explained that a "bundle" is a "couple of bags of heroin . . . held together with a rubber band." Bender reached into defendant's front right pocket and removed ten bags of heroin, and immediately placed him under arrest. At police headquarters, defendant was processed, and a subsequent search uncovered additional bags of heroin, and approximately $170.

After the suppression hearing, Judge Peter E. Warshaw made detailed findings of fact on the record, including that Detective Bender was a credible witness. Relying on State v. Bard, 445 N.J. Super. 145 (App. Div. 2016), Judge Warshaw explained that he considered the totality of the circumstances and gave weight to Detective Bender's knowledge and experience, as well as all reasonable inferences gleaned from the facts. Specifically, the court found that east Trenton "is an area with which Detective Bender is extremely familiar," and that he knew it was "a high drug trafficking area" and a "high crime area," which "includes substantial weapons." Judge Warshaw also determined that Detective Bender believed he witnessed a narcotics transaction.

After noting that Detective Bender "didn't have anything that [made it] absolutely certain" that defendant was in possession of a weapon, Judge Warshaw concluded that "in my judgment, he d[id] not have to." Instead, the court noted that Detective Bender "has spent, really, his entire professional career in that area," which included drugs and "weapons investigations there," and found that he knew that "those who sell drugs are frequently armed." Having found that Detective Bender believed he had just witnessed a drug transaction involving heroin, the court determined that he conducted a pat-down "as a large function of being informed by his training and experience" and "superior level of knowledge concerning the area."

Accordingly, based on the detective's testimony, the court determined that "a reasonable police officer would perceive a threat to the safety of other police officers in this situation," and concluded that Detective Bender was entitled to stop and frisk defendant. Further, Judge Warshaw was "absolutely satisfied that the State met its burden" of proving the "drugs . . . were [properly] seized in the field," and concluded that the drugs found at police headquarters were lawfully seized incident to an arrest.

A-4844-17T4

II.

In reviewing a motion to suppress, we defer to the trial court's factual and credibility findings, "so long as those findings are supported by sufficient credible evidence in the record." State v. Handy, 206 N.J. 39, 44 (2011) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). This deference is particularly appropriate when the court's factual findings are "substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Reece, 222 N.J. 154, 166 (2015) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). "An appellate court should disregard those findings only when a trial court's findings of fact are clearly mistaken." State v. Hubbard, 222 N.J. 249, 262 (2015). We afford no special deference to the court's legal conclusions, however, which we review de novo. State v. Gandhi, 201 N.J. 161, 176 (2010).

On appeal, defendant first argues that Detective Bender lacked the reasonable, particularized suspicion of criminal activity necessary for an investigatory detention. We disagree.

The Fourth Amendment of the United States Constitution, and Article I, Paragraph 7 of the New Jersey Constitution, guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures" by requiring warrants issued on probable cause. "Under our constitutional jurisprudence, when it is practicable to do so, the police are generally required to secure a warrant before conducting a search . . . ." State v. Hathaway, 222 N.J. 453, 468 (2015) (citations omitted). One exception, however, is an investigatory stop. See Elders, 192 N.J. at 246.

It is well settled that police officers may lawfully detain someone to conduct an investigatory stop without a warrant, and on less than probable cause. Terry v. Ohio, 392 U.S. 1, 22 (1968); State v. Stovall, 170 N.J. 346, 356 (2002). An investigatory stop allows an officer to detain an individual temporarily for questioning if the officer can articulate "some minimum level of objective justification" based on "something more" than an "inchoate and unparticularized suspicion or hunch" of wrongdoing. United States v. Sokolow, 490 U.S. 1, 7 (1989) (citation and internal quotation marks omitted); accord State v. Nishina, 175 N.J. 502, 511 (2003).

A warrantless investigative stop is valid when an "officer observes unusual conduct which leads [the officer] reasonably to conclude in light of his [or her] experience that criminal activity may be afoot . . . ." Terry, 392 U.S. at 30. The stop must be "based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable

suspicion of criminal activity." State v. Pineiro, 181 N.J. 13, 20 (2004) (quoting Nishina, 175 N.J. at 510-11). Reasonable suspicion "involves a significantly lower degree of objective evidentiary justification than does the probable cause test," State v. Davis, 104 N.J. 490, 501 (1986), and is found when an officer has "a particularized and objective basis for suspecting the person stopped of criminal activity." Stovall, 170 N.J. at 356 (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)).

A reviewing court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing" by the detained individual. United States v. Arvizu, 534 U.S. 266, 273 (2002). In evaluating the totality of the circumstances "giving rise to the officer's suspicion of criminal activity, courts are to give weight to 'the officer's knowledge and experience' as well as 'rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise.'" State v. Richards, 351 N.J. Super. 289, 299-300 (App. Div. 2002) (quoting State v. Arthur, 149 N.J. 1, 10–11 (1997)). Thus, a police officer may conduct an investigatory stop if, based on the totality of the circumstances, there is reasonable suspicion to believe an individual has just

engaged in, or about to engage in, criminal activity. State v. Maryland, 167 N.J. 471, 487 (2001).

A "stop" and "frisk" under Terry are judged under two separate inquiries:

> [T]he facts that allow the detaining officer to make a stop do not automatically permit that officer to search for weapons. While the right to search may flow from the same set of facts that permitted the stop, "in situations where . . . the officers have no prior indication that the suspect is armed, more is required to justify a protective search."
>
> [State v. Garland, 270 N.J. Super. 31, 41-42 (App. Div. 1994) (quoting Thomas, 110 N.J. at 680).]

Addressing the Terry investigatory stop first, we are satisfied that the trial court's findings of fact are supported by sufficient credible evidence. Detective Bender testified that while patrolling an area known for high narcotics and illegal weapons activities, he witnessed two individuals huddle together and engage in what the detective believed was a narcotics transaction. Specifically, Detective Bender testified that he observed defendant pull "an unknown white object, light in color, [and] rectangular," which defendant manipulated before handing to another individual. Based on Detective Bender's "training and experience in these investigations" and the manner in which defendant manipulated the object, the detective specifically believed the object was heroin. These are articulable facts to support an objectively reasonable determination

10

that defendant engaged in criminal activity sufficient to justify the Terry stop. See Pineiro, 181 N.J. at 26 ("the reputation or history of an area" as being a high-crime area "and an officer's experience with and knowledge of the suspected transfer of narcotics" are "relevant factors to determine the validity of a Terry stop").

III.

Defendant next contends that the police lacked any reasonable suspicion to warrant a pat-down search. Specifically, he claims that because Detective Bender "conducted the search simply because of his generalized belief that drugs and weapons went hand-in-hand with one another," the frisk of defendant's person for weapons was not objectively reasonable. As a result, defendant contends the heroin should have been suppressed. Again, we disagree.

Under Terry, once stopped, the "officer may conduct a reasonable search for weapons if he [or she] is 'justified in believing that the individual whose suspicious behavior he [or she] is investigating at close range is armed and presently dangerous to the officer or to others.'" Richards, 351 N.J. Super. at 299 (quoting Terry, 392 U.S. at 24). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety[,] or that of others[,] was in danger." Terry, 392 U.S. at 27. "The protective search

11

'must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.'" State v. Jackson, 276 N.J. Super. 623, 629 (App. Div. 1994) (quoting Terry, 392 U.S. at 29). "[T]he same conduct that justifies an investigatory stop may also present the officer with a specific and particularized reason to believe that the suspect is armed." State v. Privott, 203 N.J. 16, 30 (2010). The existence of reasonable suspicion to frisk "is based on the totality of the circumstances." Roach, 172 N.J. at 27.

Accordingly, if a police officer conducts a pat-down search of an individual and detects an object in the clothing of the individual that the officer does not recognize as a weapon, nor identify as contraband, any nonthreatening contraband seized may not be used against the individual in a criminal prosecution. Jackson, 276 N.J. Super. at 630. However:

> [i]f a police officer lawfully pats down a suspect's outer clothing[,] and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical consideration that adhere in the plain view context.
>
> [Id. at 630-31 (emphasis omitted) (quoting Minnesota v. Dickerson, 508 U.S. 366, 375-76 (1993)).]

A-4844-17T4

Here, we conclude that Detective Bender's pat-down search of defendant was justified. Detective Bender testified that the part of Trenton in which this incident occurred was a high-crime area and that he had encountered weapons "numerous times in that area." "Although a stop in a high-crime area does not by itself justify a <u>Terry</u> frisk . . . , the location of the investigatory stop can reasonably elevate a police officer's suspicion that a suspect is armed." <u>State v. Valentine</u>, 134 N.J. 536, 547 (1994) (citing <u>Maryland v. Buie</u>, 494 U.S. 325, 334–35 n.2 (1990)). Further, Detective Bender stated that he believed he "witnessed a narcotics transaction" between defendant and the other individual. "[E]ven apart from [an officer's] personal experiences," courts "have recognized that to 'substantial dealers in narcotics' firearms are as much 'tools of the trade' as are most commonly recognized articles of narcotics paraphernalia." <u>United States v. Oakes</u>, 560 F.2d 45, 62 (2d Cir. 1977) (quoting <u>United States v. Wiener</u>, 534 F.2d 15, 18 (2d Cir. 1976)). In this case, the detective used his "training and experience in these investigations" and his observation of how defendant manipulated the drug to conclude specifically that he had witnessed a transaction in heroin.

Thus, the particularized suspicion that defendant had a weapon was that Detective Bender believed, based on his experience and training, he just

A-4844-17T4

witnessed defendant provide heroin to another individual before the suspects swiftly departed. See State v. Ramos, 282 N.J. Super. 19, 21 (App. Div. 1995) (finding an officer's observations in "an area of high drug activity," "considered in light of [the officer's] training and experience, supported a reasonable suspicion that defendant was engaging in a drug transaction"). Those factors, coupled with Detective Bender's testimony that, based on his familiarity with this particular area and his experience investigating crimes in it, people who engage in narcotics transactions there tend to have weapons on them, render his decision to pat defendant down for a weapon objectively reasonable. See Valentine, 134 N.J. at 547 ("Terry itself acknowledges that police officers must be permitted to use their knowledge and experience in deciding whether to frisk a suspect"); id. at 543 (explaining that although "the Terry standard is an objective one, . . . '[t]he process does not deal with hard certainties, but with probabilities'") (second alteration in original) (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).

Therefore, the frisk was justified under the circumstances. As a result, and because the detective immediately identified the object in defendant's pocket as contraband without first manipulating it, the seizure of the heroin was lawful. See State v. Toth, 321 N.J. Super. 609, 616-17 (App. Div. 1999)

14

(holding that a pat-down in which an officer immediately identifies an object as contraband without "in any way[] manipulat[ing] or explor[ing]" it "with his fingers" was a valid <u>Terry</u> frisk under the plain-feel doctrine).[1]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] In light of our decision, we need not address the State's alternative argument that Detective Bender had probable cause to arrest defendant and that the seizure of heroin from his person resulted from a search incident to a lawful arrest.