**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0935-17T3
                A-2153-17T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

 v.

ALDABERTO VEGA,
a/k/a ADALBERTO VEGA,
ALBERTO VEGA, ALBERTA
BEGA, and TITO VEGA,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

TIMOTHY L. BETHEA, a/k/a
L.R. ALLAH, TIM BETHEA
and I RULE,

      Defendant-Appellant.

_____

Submitted (A-0935-17) and Argued (A-2153-17)
December 4, 2019 – Decided December 27, 2019

Before Judges Haas, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 15-06-1138.

Joseph E. Krakora, Public Defender, attorney for appellant in A-0935-17 (Kevin G. Byrnes, Designated Counsel, on the brief).

David A. Gies, Designated Counsel, argued the cause for appellant in A-2153-17 (Joseph E. Krakora, Public Defender, attorney; David A. Gies, on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent in A-0935-17 (Lisa Sarnoff Gochman, Assistant Prosecutor, of counsel and on the brief).

Carey J. Huff, Assistant Prosecutor, argued the cause for respondent in A-2153-17 (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Lisa Sarnoff Gochman, of counsel and on the brief).

PER CURIAM

In these back-to-back appeals, which we now consolidate for purposes of this opinion only, defendants Timothy Bethea and Aldaberto Vega challenge their convictions and sentences following a joint jury trial. We affirm in all respects in both appeals.

A Hudson County grand jury returned an indictment charging Bethea and Vega each with two counts of third-degree possession of a controlled dangerous

substance (CDS), namely heroin and cocaine, N.J.S.A. 2C:35-10(a)(1) (counts one and five); two counts of third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(3) (counts two and six); two counts of third-degree possession of CDS with intent to distribute within 1,000 feet of school property, N.J.S.A. 2C:35-7 (counts three and seven); and two counts of second-degree possession of a CDS with intent to distribute within 500 feet of a public park, N.J.S.A. 2C:35-7.1 (counts four and eight). Additionally, Vega was indicted on one count of fourth-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(1) (count nine).

In May 2016, the motion judge conducted a hearing regarding defendants' joint motions to suppress evidence seized with, and without, a warrant. He denied both motions in June 2016. In April 2017, the judge granted the State's motion to dismiss counts four and eight.

Defendants were tried together and, at the close of the State's case, Vega moved for a judgment of acquittal, pursuant to Rule 3:18-1, on counts one, two, three, five, six and seven of the indictment. The trial judge (who also presided over the suppression hearing and defendants' sentencings) denied the motion. When the multi-day trial concluded in May 2017, a unanimous jury found Bethea guilty on all counts and found Vega guilty on counts one, two, three, and

nine, but acquitted him on those counts involving cocaine, i.e., counts five through seven. In July 2017, Vega pled guilty to fourth-degree obstruction, N.J.S.A. 2C:29-1, and simple assault, N.J.S.A. 2C:12-1A(1), under a separate accusation.[1]

On August 2, 2017, the trial judge sentenced both defendants. He granted the State's motion to sentence Bethea to a mandatory extended term, under N.J.S.A. 2C:43-6(f), on counts three and seven. The judge merged counts one and two; count two was merged into count three. He also merged counts five and six into count seven. Counts four and eight were dismissed. The judge imposed concurrent sentences on counts three and seven, and sentenced Bethea to an aggregate term of eight years with a minimum parole ineligibility period of four years on both counts. Further, the judge suspended Bethea's driver's license for forty-eight months on counts three and seven, with the suspensions to run concurrent to one another.

Vega was sentenced the same day as Bethea. He again moved for a judgment of acquittal and for a new trial on counts one, two, three and nine at sentencing. The trial judge denied his application and imposed sentence. He

---

[1] Neither Vega's convictions under the accusation, nor defendants' separate convictions for summons complaint offenses, are the subject of this appeal.

first merged counts one and two; count two was merged into count three. Counts four, five, six, seven and eight were dismissed. The judge sentenced Vega to a prison term of five years with a three-year period of parole ineligibility on count three and imposed additional penalties and fees. Count nine was amended to a disorderly persons hindering offense, and Vega was sentenced to fines only.

The sentencing judge conducted a qualitative aggravating and mitigating factor analysis for each defendant's sentence. He found aggravating factors N.J.S.A. 2C:44-1(a)(3) (the risk of reoffense), N.J.S.A. 2C:44-1(a)(6) (a prior criminal record), and N.J.S.A. 2C:44-1(a)(9) (the need to deter), as well as mitigating factor N.J.S.A. 2C:44-1(b)(11) (imprisonment will result in excessive hardship to defendant and his family). For Bethea's sentence, the judge found "the aggravating factors clearly outweigh the mitigating factor[]"; for Vega's sentence, the judge determined the aggravating factors outweighed the mitigating factor.

On appeal, defendant Bethea raises the following arguments:

POINT ONE

THE MOTION JUDGE'S LEGAL CONCLUSIONS REGARDING THE INITIAL DETENTION, THE PATROLMAN'S ENTRY INTO THE SUV WITHOUT CONSENT AND THE SUBSEQUENT SEARCH OF DEFENDANT'S PERSON WITHOUT A WARRANT ARE ERRONEOUS AND REQUIRE REVERSAL.

A. THE PATROLMAN'S INITIAL DETENTION OF THE TAHOE WAS AN INVESTIGATORY STOP WHICH WAS THE RESULT OF AN INARTICULABLE SUSPICION THAT CRIMINAL ACTIVITY WAS AFOOT.

B. THE PATROLMAN'S ENTRY INTO THE REAR PASSENGER COMPARTMENT OF THE TAHOE WAS WITHOUT CONSENT OR A REASONABLE AND ARTICULABLE SUSPICION THAT DEFENDANT WAS ARMED.

   (i)  The incriminating evidence inside the Tahoe seized without a search warrant was not in the patrolman's plain view.

   (ii) The incriminating evidence inside the Tahoe seized without a search warrant was not based on a reasonable and articulable suspicion that defendant was armed or dangerous.

   (iii) Conclusion.

C. THE SEARCH OF DEFENDANT AFTER HE WAS IN CUSTODY CANNOT BE JUSTIFIED AS ONE INCIDENT TO HIS ARREST.

D. CONCLUSION.

POINT TWO

THE EVIDENCE SEIZED FROM THE SUV WITH A SEARCH WARRANT CANNOT BE ATTENUATED FROM THE TAINT OF THE UNCONSTITUTIONAL CONDUCT ON THE PART OF THE PATROLMAN.

A-0935-17T3

POINT THREE

THE SENTENCING JUDGE'S IMPOSITION OF A FOUR-YEAR PERIOD OF PAROLE INELIGIBILITY IS ERROR WHERE IT DID NOT FIND THAT THE AGGRAVATING FACTORS SUBSTANTIALLY OUTWEIGH THE MITIGATING FACTORS.

On appeal defendant Vega raises the following arguments:

POINT I

THE DEFENDANT-PASSENGER'S MOTION TO DISMISS DUE TO INSUFFICIENT EVIDENCE SHOULD HAVE BEEN GRANTED BECAUSE KNOWLEDGE (LET ALONE CONTROL) SHOULD NOT BE IMPUTED TO THE PASSENGER WHEN POLICE FIND DRUGS IN THE DRIVER'S GIRLFRIEND'S VEHICLE CONCEALED IN THE DRIVER'S GIRLFRIEND'S SWEATSHIRT.

POINT II

JURORS ASKED FOR CLARIFICATION AND A "LAY" DEFINITION OF THE LAW OF CONSTRUCTIVE POSSESSION AND THE TRIAL COURT MERELY REREAD THE SAME INSTRUCTION, WITHOUT A FACTUAL CONTEXT, WHICH DID NOTHING TO ALLEVIATE THEIR CONFUSION.  (Not Raised Below).

POINT III

THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, [¶]1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE

7

TRIAL COURT'S FAILURE TO INSTRUCT THE JURORS ON ALL THE ESSENTIAL ELEMENTS OF INTENT TO DISTRIBUTE CDS.  (Not raised below).

POINT IV

THE CONVICTION FOR INTENT TO DISTRIBUTE CDS SHOULD BE VACATED BECAUSE A POLICE WITNESS IMPROPERLY AND PREJUDICIALLY RENDERED AN OPINION THAT THE VEHICLE OCCUPANTS WERE IN THE PARKING LOT "ABOUT TO PERFORM A NARCOTICS TRANSACTION."  [(Not Raised Below).]

POINT V

THE DEFENDANT'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES AS GUARANTEED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, [ ¶] 7 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE WARRANTLESS SEARCH AND SEIZURE.

A.    The Police Encounter Constituted an Illegal Detention.

1.    The Police Encounter was a Detention.

2.    The Police Lacked Articulable Facts Giving Rise to Reasonable Suspicion to Justify the Detention.

B.    The Warrantless Search of Clothes Inside the Vehicle was Unlawful.

POINT VI

THE SENTENCE IS EXCESSIVE.

8

After reviewing the record in light of the contentions raised by each defendant on appeal, we affirm.

I.

To place these issues in their proper context, we begin by reciting the salient facts pertaining to defendants' convictions and sentences, including facts found by the motion judge after defendants' suppression hearing.

On the evening of June 13, 2014, Officers Kaan Williams and Frank Maletto, of the Neptune Township Police Department, went to a motel in Neptune Township. The motel was known as a high crime area. Officer Williams testified at the suppression hearing that police made many arrests there and that prior to the June 13 incident, a confidential informant notified him a man known as "O.B." was conducting narcotics transactions out of a room at the motel.

When the police arrived at the motel on June 13, Officer Williams noticed a Tahoe parked in the lot away from any of the doors to the motel, even though there were several open spaces closer to the entrance of the motel. Officer Williams noticed the Tahoe was occupied by two men. He recalled the driver, an African American male later identified as Bethea, appeared to be using his

cell phone. The passenger, a Hispanic male, later identified as Vega, was looking out the window.

After observing the men for several minutes, Officer Williams drove his unmarked car and parked it in front of the Tahoe. He testified he did not block in the Tahoe, whereas Bethea testified the Tahoe was blocked in so he could not leave. Officer Williams went to the driver's side of the car, while Officer Maletto went to the passenger side. Each officer wore gear that said "police" in large yellow lettering.

When Officer Williams approached Bethea's side of the vehicle, he saw Bethea move a gray sweatshirt off his lap and onto the center console. Officer Williams asked Bethea why he was at the motel, and Bethea responded he was there to "chill." Bethea later denied making this statement. Officer Williams noted Bethea looked nervous and was sweating, even though the air conditioning was on in the Tahoe. Officer Williams also saw Bethea's chest rising and falling heavily as he was breathing. Further, the officer noticed two cell phones sitting on the Tahoe's center console. One was an iPhone and the other was a flip phone.

While Officer Williams spoke to Bethea, the iPhone rang several times, and Officer Williams asked Bethea not to answer it. The flip phone also rang,

A-0935-17T3

but both occupants of the Tahoe ignored it. According to Officer Williams, both men denied ownership of the flip phone. However, Bethea's testimony at the suppression hearing contradicted this assertion, as he claimed he admitted to police during the incident that he owned both phones.

Officer Williams asked Bethea to exit the car, because he believed either Bethea or the passenger was lying. As Bethea exited the Tahoe, Officer Williams saw him "elbow" the gray sweatshirt off the center console and onto the floor in the rear of the vehicle. He deduced Bethea was attempting to conceal the sweatshirt.

After Bethea left the vehicle, Officer Williams conducted a brief pat down for weapons and felt what he believed to be another cell phone in Bethea's right pocket. He again asked Bethea why he was at the motel. This time, Bethea answered he had dropped someone off there. Officer Williams asked for this person's name and room number. Bethea said he did not know this information and when asked how he could not know, Bethea did not respond. On cross-examination, Bethea conceded he knew the name of the person he dropped off and knew him "pretty well," but "didn't feel [he] had to share that much information" with police at the time. While Bethea spoke to Officer Williams, an African American male walked by, and did not make any eye contact with

either Bethea or Vega. When Bethea was asked if the man who walked by was the person Bethea dropped off, Bethea hung his head and answered affirmatively.

Officer Maletto questioned Vega. Vega initially told Officer Maletto his name was Antonio Ayala. Vega testified at the suppression hearing he gave police a fictitious name because he had active arrest warrants.

During the incident, two additional officers arrived on scene. Because it began it rain, Bethea asked for the sweatshirt and Officer Williams responded he would have to search it for weapons. Officer Williams went to retrieve the sweatshirt and Bethea tried to reach past him several times to get the sweatshirt. Officer Williams told Bethea to step away from the car and put his hands where they could be seen, but Bethea again reached for the sweatshirt. Officer Williams retrieved the sweatshirt and noticed a large bulge in its sleeve. He testified that due to his training and experience, he knew immediately the bulge constituted "bricks"[2] of heroin. The heroin was stamped "Louis Vuitton" and amounted to seven bricks and one bundle. At the suppression hearing, Bethea testified the sweatshirt and Tahoe belonged to his girlfriend. He also denied

---

[2] Officer Williams confirmed ten bags of heroin equate to a "bundle" of heroin, and a "brick" of heroin equates to fifty glassine bags.

asking police for the sweatshirt, denied it had been on his lap, and denied he moved it to the console or the rear of the vehicle.

Vega was arrested once police determined he provided a fictitious name and had outstanding warrants. Likewise, Bethea was arrested after police found heroin in the sweatshirt. Bethea was searched incident to his arrest and police noted he moved and impeded the search by tightening his buttocks. However, the officer performing the search was able to detect a bulge in the crotch area of Bethea's pants. Consequently, Officer Williams' supervisor ordered Bethea be strip searched at the police station.

During the strip search, the police found eleven plastic twists of crack cocaine and seven glassine bags of heroin. These bags of heroin also were stamped "Louis Vuitton." Bethea testified at the suppression hearing that he did not know about the heroin in the sweatshirt but did know about the heroin found on his person during the strip search.

Before defendants were transported to police headquarters, Officer Williams asked Bethea for consent to search the Tahoe and Bethea refused. Bethea admitted during the suppression hearing that he refused consent, but he claimed Officer Williams still searched the Tahoe.

A-0935-17T3

It is undisputed Officer Williams requested a canine search of the Tahoe and the dog alerted for narcotics in the Tahoe. Based on these circumstances, police applied for and received a search warrant for the Tahoe. During the warranted search, police found a clear plastic twist containing crack cocaine, as well as a hypodermic needle and two cellphones.

## II.

In Point I of Bethea's and Point V of Vega's brief, defendants argue the trial court's denial of their motions to suppress evidence seized without and with a warrant constituted error. We disagree.

"A trial court's evidentiary rulings are entitled to deference absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment." State v. Nantambu, 221 N.J. 390, 402 (2015) (quoting State v. Harris, 209 N.J. 431, 439 (2012)). We assess whether there was a clear error in judgment in light of the applicable law. State v. Rinker, 446 N.J. Super. 347, 358 (2016).

To protect Fourth Amendment rights against unfounded invasions of liberty and privacy, the United States Supreme Court has required that a neutral and detached magistrate determine if probable cause existed for a search, whenever possible. Gerstein v. Pugh, 420 U.S. 103, 112 (1975). Under the Fourth Amendment of the United States Constitution and Article 1, Paragraph 7

of the New Jersey Constitution, a warrantless search is presumed invalid, and the State has the burden to prove the search "falls within one of the few well-delineated exceptions to the warrant requirement," thus becoming valid. State v. Pineiro, 181 N.J. 13, 19 (2004) (quoting State v. Maryland, 167 N.J. 471 (2001)).

It is well established that a field inquiry does not implicate a person's Fourth Amendment rights as it is considered a significantly less intrusive encounter than an investigatory detention. Pineiro, 181 N.J. at 20. Police initiate a field inquiry when an officer approaches a person and asks if he or she is willing to answer some questions. State v. Adubato, 420 N.J. Super. 167, 177 (App. Div. 2011) (citing Pineiro, 181 N.J. at 20). During a field inquiry, an individual may decline to answer any questions and is free to leave at any time. Ibid. "[A]bsent any impermissible reason for questioning defendant[s], the officers [are] permitted to make a field inquiry 'without grounds for suspicion.'" Maryland, 167 N.J. at 483 (quoting State v. Contreras, 326 N.J. Super. 528, 538 (App. Div. 1999)). Law enforcement does not violate the Fourth Amendment "by merely approaching an individual on the street or in another public place . . . by putting questions to him [or her] if the person is willing to listen . . . ." Florida v. Royer, 460 U.S. 491, 497-98 (1983).

A-0935-17T3

An investigatory stop is more intrusive than a field inquiry.  Such a stop occurs during a police encounter when "an objectively reasonable person" would feel "that his or her right to move has been restricted."  State v. Rosario, 229 N.J. 263, 272 (2017) (quoting State v. Rodriguez, 172 N.J. 117, 126 (2002)). "Because an investigative detention is a temporary seizure that restricts a person's movement, it must be based on an officer's 'reasonable and particularized suspicion . . . that an individual has just engaged in, or was about to engage in, criminal activity.'"  Ibid.  (quoting State v. Stovall, 170 N.J. 346, 356 (2002)).

> The "articulable reasons" or "particularized suspicion" of criminal activity must be based upon the law enforcement officer's assessment of the totality of circumstances with which he [or she] is faced. Such observations are those that, in view of [an] officer's experience and knowledge, taken together with rational inferences drawn from those facts, reasonably warrant the limited intrusion upon the individual's freedom.
>
> [State v. Davis, 104 N.J. 490, 504 (1986).]

Our Supreme Court has held that "there are some cases in which 'furtive' movements or gestures by a motorist, accompanied by other circumstances, will ripen into a reasonable suspicion that the person may be armed and dangerous or probable cause to believe that the person possesses criminal contraband." Ibid.  (quoting State v. Lund, 119 N.J. 35, 48 (1990)).

16

An exception to the warrant requirement permits a police officer to detain an individual for a brief period, and to pat that person down for safety reasons, if a stop is based on "specific and articulable facts which, taken together with rational inferences from those facts," give rise to a reasonable suspicion of criminal activity. Adubato, 420 N.J. Super. at 177-78 (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). Under this standard, an investigatory stop is valid only if the officer has a "particularized suspicion" based upon an objective observation that the person stopped has been engaged or is about to engage in criminal wrongdoing. Ibid. (citing Davis, 104 N.J. 490 (1986)).

"To determine whether the State has shown a valid investigative detention requires a consideration of the totality of the circumstances." State v. Elders, 192 N.J. 224, 247 (2007). "Such encounters are justified only if the evidence, when interpreted in an objectively reasonable manner, shows that the encounter was preceded by activity that would lead a reasonable police officer to have an articulable suspicion that criminal activity had occurred or would shortly occur." Davis, 104 N.J. at 505.

A Terry stop can lead to an officer finding and seizing contraband in "plain view." The plain view doctrine is another exception to the warrant requirement. See State v. Reininger, 430 N.J. Super. 517 (App. Div. 2013); see also State v.

Gonzales, 227 N.J. 77. "'[A] police officer lawfully in the viewing area' need not 'close his eyes to suspicious evidence in plain view.'" Reininger, 430 N.J. Super. at 535 (quoting State v. Bruzzese, 94 N.J. 210, 237 (1983) (overruled in part by Gonzales, 227 N.J. at 101)).

Police may seize contraband in plain view and without a warrant if three requirements are met, namely: (1) the officer must be lawfully in the viewing area when making the observation, (2) the discovery of the evidence . . . must be inadvertent, and (3) the incriminating nature of the evidence to be seized must be immediately apparent to the police. Gonzales, 227 N.J. at 91 (quoting Coolidge v. New Hampshire, 403 U.S. 443, 466-68 (1971)). In Gonzales, the New Jersey Supreme Court prospectively eliminated the inadvertence prong of the plain-view test. Id. at 91. But, the Gonzales ruling was effective as of the date of the opinion in November 2016, so it does not control here. Id. at 101.

Another exception to the warrant requirement, the consent exception, may be permissibly fulfilled by either express consent or implied consent. State v. Koedatich, 112 N.J. 225, 262 (1988). Implied consent to search and express consent to search are equally efficacious. Ibid. Consent may be implied by a person's conduct. Ibid. "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is

18

a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973).

We are satisfied from the record the judge understood these principles when deciding whether police initiated a field inquiry or an investigative detention at the motel. After hearing from Officer Williams and defendants at the suppression hearing, the motion judge concluded the "testimonies [were] so divergent," that the issue came down to a credibility determination. The judge stated he "clearly [found] that the story of Officer Williams is the more credible of the two stories." The motion judge disbelieved Bethea's claim he did not know about the heroin secreted in the sweatshirt since Bethea said he knew he had heroin hidden in his clothing and both batches of heroin contained the same "Louis Vuitton" stamp. In assessing defendants' credibility against that of Officer Williams, the judge also considered the officer's background, defendants' criminal records and the fact Vega gave police a false name during the incident.

In concluding the police initiated a field inquiry when approaching the Tahoe, the judge found police did not block in the Tahoe or activate their lights when they approached defendants. Likewise, the judge found Officer Williams' request for Bethea's identification was not determinative and did not transform

the field inquiry into an investigative stop. In assessing and sanctioning the nature of the officers' activity as it escalated from a field inquiry to an investigative detention, the judge also considered the time of the incident, the location of the stop in a high crime area, the multiple phones found at the scene, the informant's tip, Bethea's conflicting reasons for being in the motel lot, and Vega's decision to provide a fictitious name. Given the totality of circumstances, there is no basis to disturb the judge's finding nor his legal conclusions about the initial phases of defendants' encounter with police.

We also find no error with the judge's determination that police properly asked defendants to exit the Tahoe and subjected Bethea to a pat-down after defendants denied owning the flip phone spotted in the car. As the judge aptly noted, Bethea gave Officer Williams incomplete answers about why he was at the motel and Vega provided a fake name to police. During the pat-down, Officer Williams noticed Bethea "had what felt like a cell phone" in his pocket. Thus, before he arrested Bethea, Officer Williams identified two extra phones in Bethea's possession. The judge credited Officer Williams' statement that "from [the officer's] training and experience . . . people who are engaged in narcotic activity usually have more than one cell phone on them."

A-0935-17T3

Based on these proofs, the motion judge concluded police had a "reasonable suspicion that defendants were engaging in criminal behavior . . . [which justified] moving to an investigative stop, and ultimately the detention." The judge explained:

> "Clearly the officers at that point for their safety and to confirm the versions . . . separate[d] co-defendants to speak with them . . . . [t]hen . . . the pat-down search of Mr. Bethea . . . based on those circumstances of what existed at that point I think were clear . . . . with regard to officer safety . . . ."

The judge again credited Officer Williams' account regarding his discovery of heroin in the gray sweatshirt. The judge believed that when it began to rain during the incident, Bethea asked for "his sweatshirt," and Officer Williams properly replied he could have it if the officer could first pat it down. During the suppression hearing, Officer Williams explained he needed to pat down the sweatshirt, "[b]ecause [of] the movement that [Bethea] made earlier. And any time we give somebody an article of clothing . . . we make sure it doesn't have any weapons in it, first." The judge also accepted Officer Williams' testimony that when he opened the door to retrieve the sweatshirt, Bethea attempted to reach past him and grab the sweatshirt and did not obey commands to stand back. Again, the judge noted:

21

A-0935-17T3

"the testimonies [were] so divergent with regard to what happened next with . . . reaching for the sweatshirt . . . . whether the plain view exception would apply is a determination of credibility . . . And I clearly find that the story of Officer Williams is the more credible of the two stories."

Given the judge's determination that the sweatshirt was in plain view and that police had implied consent to search it after Bethea requested it, we see no reason to disturb his finding that police appropriately engaged in a protective Terry search for weapons, considering Bethea's actions to that point.

Next, we find Bethea's challenge to the strip search lacks merit. An officer "may conduct a search of the person of the suspect . . . to protect the safety of the officer and to preserve evidence that may be destroyed or removed." State v. Bradley, 291 N.J. Super. 501, 509 (App. Div. 1996) (citations omitted). Based on the suspected phone concealed in Bethea's groin area, and Bethea's evasive actions at the scene, the police had probable cause to believe Bethea had concealed contraband. State v. Toth, 321 N.J. Super. 609, 614-15 (App. Div. 1999). Further, Bethea's reliance on the Strip Search Act, N.J.S.A. 2A:161A-1, in support of his contention the search was unlawful, is misplaced. The very terms of the Act apply only to "[a] person who has been detained or arrested for commission of an offense other than a crime. . . ." N.J.S.A. 2A:161A-1 (emphasis added). Clearly, the Strip Search Act and its corresponding Attorney

22

General's Guidelines provide no appellate remedy for Bethea, as he was arrested for indictable offenses. State v. Brown, 456 N.J. Super. 352, 364 (App. Div. 2018).

We also are satisfied the judge properly found Officer Williams had probable cause to arrest Bethea on suspicion Bethea had committed the crime of possession of CDS. Not only did this officer detect three phones in Bethea's possession, but he saw Bethea move a sweatshirt twice before it was retrieved by police and found to contain heroin.

Appellate review of a motion judge's factual findings in a suppression hearing is highly deferential. Gonzales, 227 N.J. at 101 (citing State v. Hubbard, 222 N.J. 249, 262 (2015)). We are obliged to uphold the motion judge's factual findings so long as sufficient credible evidence in the record supports those findings. Ibid. (citations omitted); see State v. Dunbar, 229 N.J. 521, 538 (2017). Such factual findings are entitled to deference because the motion judge, unlike an appellate court, has the "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Gonzales, 227 N.J. at 101 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

A-0935-17T3

Here, the judge's credibility findings are amply supported by the record. Thus, on the suppression motion involving the warrantless search and seizure of evidence, we find his legal conclusions unassailable.

III.

Turning to Point III of his brief, Bethea maintains the initial warrantless searches of the Tahoe and his person were unconstitutional and, therefore, improperly led to the issuance of a search warrant. Accordingly, he insists any evidence seized from the Tahoe after the search warrant issued "cannot be attenuated from the taint of the unconstitutional conduct on the part of the patrolman." He is mistaken.

We acknowledge that evidence seized during an invalid search should be suppressed at trial. If police obtain evidence due to illegal conduct, the resulting evidence may be excluded as "fruit of the poisonous tree." State v. Holland, 176 N.J. 344, 353 (2003). This evidence is excluded to "ensure that the deterrent aim of the exclusionary rule is realized." State v. Atwood, 232 N.J. 433, 448-49 (2018). However, evidence may still be admissible under the doctrine of attenuation if the "causal connection between the illegal conduct and obtaining the evidence has become so attenuated as to dissipate the taint . . . ." State v. James, 346 N.J. Super. 441, 453 (App. Div. 2002) (citing Nardone v. U.S., 308

U.S. 338, 341 (1939)). The relevant question is whether "the challenged evidence was acquired by exploitation of the primary 'illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Id. at 453-54 (quoting Wong Sun v. U.S., 371 U.S. 471, 487-88 (1963)).

Nonetheless, a search based on a properly obtained warrant is presumed valid. State v. Valencia, 93 N.J. 126, 133 (1983). When a search is conducted pursuant to a warrant, the defendant has the burden of proving the invalidity of that search, namely, "that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable." Ibid. In reviewing such a challenge, "[w]e accord substantial deference to the discretionary determination resulting in the issuance of the [search] warrant." State v. Marshall, 123 N.J. 1, 72 (1991), cert. denied, 507 U.S. 929 (1993).

Given our deferential standard of review, we are satisfied the motion judge properly found there was probable cause supporting the issuance of the warrant and that the search of the Tahoe after the warrant issued was reasonable.

IV.

Turning to Point I of Vega's brief, he argues there was insufficient evidence for his numerous CDS-related charges, as well as the hindering charge,

to go before a jury, let alone lead to his conviction. Accordingly, he claims the denial of his motions for judgment of acquittal constitutes error. We disagree.

A trial court is to enter an order for a judgment of acquittal only "if the evidence is insufficient to warrant a conviction." R. 3:18-1.

> [T]he question the trial judge must determine is whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [State v. Reyes, 50 N.J. 454, 458-59 (1967).]

We apply the same standard on appeal. State v. Kittrell, 145 N.J. 112, 130 (1996). Under Rule 3:18-1, we "confine our analysis of the adequacy of the evidence to the State's case and the inferences to be derived therefrom." State v. Samuels, 189 N.J. 236, 245 (2007). "If the evidence satisfied that standard, the motion must be denied." State v. Spivey, 179 N.J. 229, 236 (2004).

A motion for judgment of acquittal may be denied even where a defendant's proofs contradict those of the State; such contentions do not necessarily "warrant the removal of the case from the consideration of the jury." State v. Graziani, 60 N.J. Super. 1, 15-16 (App. Div. 1959).

Vega insists there was insufficient evidence to establish he was in possession of a controlled dangerous substance, whether that possession be actual or constructive. However, regarding possession of contraband, "it is enough that [a] defendant have 'intentional control and dominion' over the object." State v. Humphreys, 54 N.J. 406, 413-14 (1969) (quoting State v. DiRienzo, 53 N.J. 360, 369 (1969)). "A person constructively possesses an object when, although he lacks 'physical or manual control,' the circumstances permit a reasonable inference that he has knowledge of its presence and intends and has the capacity to exercise physical control or dominion over it during a span of time." Spivey, 179 N.J. at 236-37 (citation omitted).

Such an inference makes it more likely than not that the facts proven point to the fact inferred. DiRienzo, 53 N.J. at 376. "An inference that a drug smuggler carrying a very large quantity of drugs would travel with a knowledgeable companion, and not an 'innocent' passenger or stranger, is not only reasonable, it is likely." State in Interest of J.R., 244 N.J. Super. 630, 635 (App. Div. 1990) (quoting State v. Palacio, 111 N.J. 543, 554 (1988)).

While "criminal possession may not be inferred from [a] defendant's mere presence at the location where the contraband was found," State v. Shipp, 216 N.J. Super. 662, 665 (App. Div. 1987) (citation omitted), here, the judge

determined a jury could find Vega was more than merely present at the scene. Having presided over the suppression hearing, the motion judge knew Vega was arrested in a high crime area known for narcotics transactions. Moreover, the judge was aware the sweatshirt containing heroin was moved twice by Bethea while Vega was seated next to Bethea in the Tahoe. Further, it is undisputed Vega provided a fictitious name to police during the encounter. Also, the judge found both defendants denied ownership of the flip phone found inside the Tahoe.

As the judge was compelled to give the State the benefit of all favorable evidence presented, as well as the inferences to be derived therefrom, we are satisfied the judge committed no error in denying Vega's motions for acquittal. We have no reason to disturb his determination that a jury could reasonably infer Vega had knowledge of the heroin's presence in the Tahoe, that he intended and had the capacity to exercise physical control or dominion over it before police approached him, and that Vega was not "merely present" in the Tahoe. Likewise, we see no reason to disturb the judge's finding that a jury could reasonably infer Vega hindered his apprehension when he provided a fictitious name to police.

A-0935-17T3

V.

In Points II, III, and IV of his brief, Vega raises arguments that were not raised below. He contends the trial judge did not properly instruct the jury regarding the law of constructive possession and intent to distribute, and that the judge improperly permitted Officer Williams to render an opinion while testifying. As these arguments are raised for the first time on appeal, we review them under the "plain error" standard. State v. Pressley, 232 N.J. 587, 593 (2018). Consistent with this standard, reversal is appropriate only if an error was "clearly capable of producing an unjust result." R. 2:10-2.

"[W]hen counsel does not make a timely objection at trial, it is a sign 'that defense counsel did not believe the remarks were prejudicial . . . .'" Id. at 594 (quoting State v. Echols, 199 N.J. 344, 360 (2009)). Thus, "[d]efendant's lack of objections . . . weighs against defendant's claim that errors were 'clear' or 'obvious.' Indeed, '[i]t [is] fair to infer from the failure to object below that in the context of the trial the error was actually of no moment.'" State v. Nelson, 173 N.J. 417, 471 (2002) (second and third alterations in original) (quoting State v. Macon, 57 N.J. 325, 333 (1971)). "The failure to object also deprives the court of an opportunity to take curative action." State v. Frost, 158 N.J. 76, 84 (1999). Guided by these principles, we find no error, let alone plain error, with

the judge's jury charges or his admission of Officer Williams' contested statement. We add only a few brief comments.

"[P]roper jury instructions are essential to ensuring a fair trial." State v. Robinson, 165 N.J. 32, 40 (2000) (citing State v. Green, 86 N.J. 281, 287 (1981)). "It is the independent duty of the court to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party." State v. Reddish, 181 N.J. 553, 613 (2004). A trial court's "failure to charge the jury on an element of an offense is presumed to be prejudicial error, even in the absence of a request by defense counsel," requiring reversal. State v. Federico, 103 N.J. 169, 176 (1986).

"A trial court is vested with discretion in delivering the jury instructions that are most applicable to the criminal matter before it." State v. Funderburg, 225 N.J. 66, 80 (2016) (citing State v. Ernst, 32 N.J. 567, 583-84 (1960)). To assess the soundness of the jury instruction, an appellate court considers "how and in what sense, under the evidence before them, and the circumstances of the trial, would ordinary . . . jurors understand the instructions as a whole." State v. Savage, 172 N.J. 374, 387 (2002) (alteration in original) (quoting Crego v. Carp, 295 N.J. Super. 565, 573 (App. Div. 1996)).

A-0935-17T3

Vega argues the trial judge improperly instructed the jury about constructive possession when it requested clarification. But the judge's instructions on constructive possession were based on the applicable jury charge and statutory definitions. See Model Jury Charges (Criminal), "Unlawful Possession of a Controlled Dangerous Substance" (N.J.S.A. 2C:35-10) (rev. Jan. 14, 2013); see also N.J.S.A. 2C:35-2. Moreover, the judge responded to the jury's request for clarification, stating:

> Unfortunately, we are bound by the definitions that are contained in the model jury charges . . . . But I will reread certain portions to you . . . And as you know it's under . . . the unlawful possession of a [CDS] . . . . A person may possess—and I'll just say instead of heroin, it says here which is an illegal substance - even though it was not physically on the person at the time of the arrest - and it doesn't even have to be, it could be possession of anything, it doesn't have to be an illegal substance. I will elaborate that far . . . if they have, in fact at some time prior to the arrest, control over it . . . . On the other hand, constructive possession means possession in which the possessor does not physically have the item on his or her person, but is aware that the item is present and is able to and had the intention to exercise control over it.

We are satisfied the judge's instructions and subsequent clarifications properly apprised the jury of the legal principles necessary to determine whether Vega had constructive possession of heroin. Indeed, the jury's verdict demonstrates the jurors understood this information because they acquitted

31

Vega on all counts involving cocaine, evincing their ability to distinguish between those facts involving Vega's possession of heroin rather than cocaine.

Vega next argues the judge did not fully instruct jurors on the essential criminal elements of possession with intent to distribute CDS, and he improperly included the word "attempt" in the charge without defining "attempt." However, the judge outlined the elements of the crime of possession with intent to distribute, explaining what constituted "intent" and he instructed:

> In regard to the third element[,] that the defendants had the intent to distribute . . . . Distribute means the transfer, actual, constructive, or [at]tempted from one person to another of a [CDS]. The intent must refer to the defendants' purpose to distribute . . . the [CDS] and not merely to possess the items . . . . Intent means a purpose to do something . . . . The intention may be gathered from a person[,] act, conduct . . . and from all the surrounding circumstances . . . . You may consider any evidence as to the quantity, purity and packaging . . . .

The judge's charge tracked the pertinent Model Jury Charge. See Model Jury Charge (Criminal), "Possession of a Controlled Dangerous Substance with Intent to Distribute" (N.J.S.A. 2C:35-5) (rev. June 8, 2015). Moreover, Vega has not demonstrated that by omitting a definition for the word, "attempt," while charging the jury, the judge deprived jurors of fairly assessing the merits of Vega's defense and caused the jury to reach a result it would not have otherwise

A-0935-17T3

reached. There is nothing in the record to suggest this case involved attempted distribution. Accordingly, we find no error, much less plain error, with the judge's jury charges.

Turning to Vega's contention that Officer Williams usurped the role of the jurors by stating defendants "had no legitimate reason to be [at the motel]" and were "about to perform a narcotics transaction," we are satisfied this argument, too, lacks merit.

Permissible lay opinion testimony can be based on, and supported by testimony about, the officer's personal perception and observation. State v. McLean, 205 N.J. 438, 459 (2011). "[L]ay opinion testimony is limited to what was directly perceived by the witness and may not rest on otherwise inadmissible hearsay." Id. at 460. A witness may not "offer a lay opinion on a matter 'not within [the witness's] direct ken . . . and as to which the jury is as competent as he to form a conclusion[.]'" Id. at 459 (alterations in original) (quoting Brindley v. Firemen's Ins. Co., 35 N.J. Super. 1, 8 (App. Div. 1955)).

Here, Officer Williams' testimony about his initial observations of the defendants simply provided an explanation for why he proceeded to conduct a field inquiry. He did not opine on the ultimate issue of Vega's guilt, and the jury was able to consider the evidence and conclude Vega was guilty on some counts

and not others. Thus, Vega has not shown Officer Williams' explanation for conducting further investigation was "'clearly and unmistakably improper' and 'so egregious' that it deprived [Vega] of the 'right to have a jury fairly evaluate the merits of his defense.'" Pressley, 232 N.J. at 593-94 (quoting State v. Wakefield, 190 N.J. 397, 437-38 (2007)).

VI.

Finally, each defendant claims the judge erred when imposing sentence. In his Point III, Bethea argues the imposition of a four-year period of parole ineligibility on each of his eight-year sentences was impermissible because the judge did not conclude the applicable aggravating factors "substantially outweighed" the one mitigating factor he found. On the other hand, Vega simply maintains that his sentence is excessive. We are not persuaded by defendants' arguments.

As to Bethea's contention, we note the language set forth in subsection (b) of N.J.S.A. 2C:43-6, provides:

> "where the court is clearly convinced that the aggravating factors substantially outweigh the mitigating factors, as set forth in subsections a. and b. of [N.J.S.A.] 2C:44-1, or the court finds that the aggravating factor set forth in paragraph (5) of subsection a. of N.J.S.[A.] applies, the court may fix a minimum term not to exceed one-half of the term set pursuant to subsection a., or one half of the term set

34

> pursuant to a maximum period of incarceration for a crime set forth in any statute other than this code, during which the defendant shall not be eligible for parole . . . .
>
> [N.J.S.A. 2C:43-6(b).]

However, Bethea was not sentenced under N.J.S.A. 2C:43-6(b). Instead, he was sentenced as a repeat drug offender under subsection (f) of the statute, and the discretionary language Bethea references in support of his argument does not appear in subsection (f) of the statute.

In State v. Thomas, 188 N.J. 137, 150 (2006), the Court made clear that "when a prosecuting attorney makes application under N.J.S.A. 2C:43-6(f), the sole determination for the sentencing court is to confirm that the defendant has the predicate prior convictions to qualify for enhanced sentencing." Here, Bethea does not question the judge was required to impose a mandatory extended term with a minimum period of parole ineligibility equal to one-third to one-half of the term, whichever was greater. N.J.S.A. 2C:43-6(f). The judge was also required to fix the term "within the extended-term range based on aggravating and mitigating factors found to be present. Thomas, 188 N.J. at 154.

There was ample support in the record for the judge's finding that the aggravating factors "clearly outweighed," the lone mitigating factor in Bethea's

case. Moreover, as Bethea's prison terms were in the mid-range of his exposure as a mandatory extended term eligible defendant, and the concurrent four-year periods of parole ineligibility on the eight-year sentences were consistent with the provisions of N.J.S.A. 2C:43-6(f), we see no basis to disturb Bethea's sentence.

Turning to Vega's sentencing argument, we do not agree his sentence is excessive. Trial judges have broad sentencing discretion as long as the sentence is based on competent credible evidence and fits within the statutory framework. State v. Dalziel, 182 N.J. 494, 500 (2005). "Appellate review of sentencing is deferential," and we therefore avoid substituting our judgment for the judgment of the trial court. Id. at 65; State v. O'Donnell, 117 N.J. 210, 215 (1989); State v. Roth, 95 N.J. 334, 365 (1984).

To ensure a defendant enjoys meaningful appellate review, a sentencing judge must identify and consider any relevant aggravating and mitigating factors that apply to the case before a sentence is imposed. Further, judges must "explain how they arrived at a particular sentence." State v. Case, 220 N.J. 49, 65 (2014).

Here again, the aggravating and mitigating factors found by the judge were based on competent and reasonably credible evidence in the record.

Further, we find the judge applied the correct sentencing guidelines enunciated in the Code. Accordingly, we discern no basis to second-guess Vega's sentence.[3]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] As for the balance of any of defendants' arguments not expressly discussed above, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

A-0935-17T3